IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY, ENVIRONMENTAL PROTECTION INFORMATION CENTER, KLAMATH-SISKIYOU WILDLANDS CENTER, and SIERRA FOREST LEGACY,<br><br>Plaintiffs,<br><br>v.<br><br>U.S. FISH & WILDLIFE SERVICE; RYAN K. ZINKE, in his capacity as Secretary of the Interior; and GREG SHEEHAN, in his capacity as Principal Deputy Director of the U.S. Fish & Wildlife Service,<br><br>Defendants. | No. C 16-06040 WHA<br><br>**ORDER GRANTING IN PART MOTION TO ALTER OR AMEND JUDGMENT AND VACATING HEARING** |

**INTRODUCTION**

In this action for declaratory and injunctive relief under the Endangered Species Act, the Service seeks to modify the court-ordered deadline for preparing a new rule. For the reasons stated below, the motion is **GRANTED IN PART**.

**STATEMENT**

This case concerns the Pacific fisher — a medium-sized brown mammal in the weasel family found in Washington, Oregon, and California. A prior order on the parties' cross-motions for summary judgment set forth the detailed background of this case (*see* Dkt. No. 80).

In October 2014, the Service proposed to list the Pacific fisher as "threatened" after a fourteen year long effort by various organizations to list the population as such. In the proposed rule, the Service concluded that the main threats or stressors to the Pacific fisher were "habitat loss from wildfire and vegetation management; toxicants (including anticoagulant rodenticides); and the cumulative and synergistic effects of these and other stressors acting on small populations" (Dkt. No. 1 ¶ 2; AR 000677).

In April 2016, the Service reversed course and withdrew the proposed rule after concluding that, in light of public comments and new information, the Pacific fisher population was stable such that none of the identified stressors amounted to a "threat" under the Act.

In October 2016, plaintiffs Center for Biological Diversity, Environmental Protection Information Center, Klamath-Siskiyou Wildlands Center, and Sierra Forest Legacy filed the instant action, seeking judicial review of the Service's final rule withdrawing the Pacific fisher's proposed listing.

An order dated September 21 on the parties' cross-motions for summary judgment held that the Service had arbitrarily and capriciously withdrawn the proposed listing under the Administrative Procedure Act (Dkt. No. 80). That order found that the Service failed to make a rational connection between studies suggesting the adverse impact of toxicant exposure (one of the previously identified threats in the proposed rule) on the Pacific fisher population and the Service's conclusion that toxicant exposure did not ultimately pose a threat. It further found that the Service's use of the then-available population trend studies failed to support such a conclusion. Although that order did not (and did not need to) reach plaintiffs' arguments as to the other identified stressors, it advised the Service to "consider and address those further points made by plaintiffs as well" (*id.* at 7–16).

Accordingly, the order vacated the Service's withdrawal, remanded the action, denied the Service's request for supplemental briefing on the question of remedy in the event of remand, and gave the Service six months (a March 22, 2019 deadline) to prepare a new rule in light of the order (*id.* at 17).

The Service now seeks to amend the judgment under Rule 59(e) to modify the remedy. It argues that, following the summary judgment order, the Service reviewed its available staffing, budget, and competing project priorities (which include other court-ordered deadlines) and accordingly determined the March 2019 deadline infeasible. The Service now seeks to modify the deadline for a new rule to July 21, 2020 (Dkt. No. 86 at 1).[1] Plaintiffs oppose, arguing that the six-month deadline is reasonable (Dkt. No. 87).

This order follows full briefing. Pursuant to Civil Local Rule 7-1(b), this order finds the Service's motion suitable for submission without oral argument and hereby **VACATES** the hearing scheduled for November 29.

## ANALYSIS

### 1. LEGAL STANDARD.

Rule 59(e) allows a party to move to amend or alter a judgment within twenty-eight days of its entry. A Rule 59(e) motion is generally granted on four basic grounds: "(1) if such motion is necessary to correct manifest errors of law or fact upon which the judgment rests; (2) if such motion is necessary to present newly discovered or previously unavailable evidence; (3) if such motion is necessary to prevent manifest injustice; or (4) if the amendment is justified by an intervening change in controlling law." *Allstate Ins. Co. v. Herron*, 634 F.3d 1101, 1111 (9th Cir. 2011) (citation omitted). Because the rule does not list the specific grounds for the motion, however, "the district court enjoys considerable discretion in granting or denying the motion." *Ibid*.

### 2. REMEDY IN LIGHT OF NEW INFORMATION.

The Service argues that at the time of summary judgment motion briefing, information required to fully address the issue of remedy was not available. Specifically, the Service explains that without an order on the scope of remand, it was difficult to gauge an appropriate timeline required to address the Court's findings on the Service's errors (Dkt. No. 86 at 2). An appropriate timeline is further affected by the Service's current staffing, workloads, budget, and competing agency priorities, including other court-ordered deadlines (*id*. at 2–3).

---

[1] The Service has not indicated that it plans to appeal the summary judgment order.

3

Now armed with newly available information gathered in light of the summary judgment order, the Service explains that it "has prepared an aggressive, but reasonably achievable schedule for addressing the errors identified in" the summary judgment order. This proposed schedule, the Service asserts, accounts for requirements under the Act and new and current information on the Service's staffing levels, workload, budget, and competing priorities (Dkt. No. 86 at 3–4).

The summary judgment order found that the Service failed to adequately consider information on toxicant exposure and population trend studies in reversing the proposed listing (Dkt. No. 80 at 7–8, 13–15). That order further suggested that the Service reexamine its conclusions criticized by plaintiffs as to the other identified stressors that the order did not reach, including wildfire and small population size (*id*. at 16). The Service therefore contends that the order's findings "reinforce the need for the Service's remanded final determination to be based on the best available scientific and commercial information" and that it "cannot simply convert" the proposed rule into a new final listing termination (Dkt. No. 86-1 ¶¶ 4, 25).

For example, the Service explains that the wildfire issue has attracted "a great deal of attention" — and unsurprisingly so, given the frequency and intensity of wildfires in the northern California-southern Oregon area in recent years (*see id.* ¶ 4). The Service notes that new information exists relating to the Pacific fishers' immediate response to post-fire landscapes in that area, as over one million acres of forest have experienced wildfires since the fall of 2015, with over 700,000 acres of forest burned in 2018 alone (*ibid.*).

As such, the Service now intends to undertake a number of specified steps to gather and analyze new information of this type "to ensure that the listing decision is made on the best available data" — all of which combined result in the Service's requested July 2020 deadline (Dkt. No. 86 at 1, 4).

This order agrees that new information since the proposed rule, such as that on wildfires, should be considered as part of the best available information. Accordingly, an extension beyond the original deadline is warranted — though not the full extension the Service seeks.

4

The Service explains it intends to reopen the comment period on the 2014 proposed rule (and has already begun this process) to obtain public input on the issues identified in the summary judgment order and any new information since the time of the proposed rule. This process, according to the Service, will require five months — three months to draft the notice, obtain management approval, and publish the notice, and two months for public comment (Dkt. No. 86-1 ¶ 8). The Service then states that, after reviewing the best available information and the public comments thereto, drafting and reviewing the Final Register document reflecting the listing determination will take an additional two months to complete (*id.* ¶¶ 13–14). Next, required reviews of the Final Register document by the Service managers and Department of the Interior and the publication of the notice in the Final Register will take, according to the Service, a minimum of three months (*id.* ¶ 15).

The Service next explains that three possible scenarios may occur at the time of publication of the notice: if the Service (1) finds listing is not warranted, the Final Register document will be a withdrawal of the proposed rule (and will constitute the final determination); (2) finds listing is warranted and "such finding follows logically from" the proposed rule, the Final Register document will be a final listing rule; or (3) finds that listing is warranted, but "that determination does not follow logically from the proposed rule," the Final Register document will constitute a revised proposed rule to list the Pacific fisher as endangered or threatened (*id.* ¶ 16).

Under the third scenario, the Service further explains that it would be required to provide a public comment period of thirty days (*id.* ¶ 17). At the end of the comment period, another six months would be required to publish a final determination (*id.* ¶ 18).

This order finds that, under these circumstances, deadlines consistent with Section 1533(b)(6) is warranted in order to provide sufficient time, in light of competing priorities, to assess the best available information and to engage in meaningful public notice and comment.[2]

---

[2] The Service notes that the region responsible for this action currently has thirty-eight petition findings scheduled, as well as an additional eight 12-month findings, two final listing determinations, and one final critical habitat determination from new 90-day petition findings, new litigation-related work, and carryover work from prior fiscal years (Dkt. No. 86-1 ¶ 20).

5

That is, the Service shall have one year from the date the withdrawal was vacated (until September 21, 2019) to publish a notice of withdrawal, final listing, or revised proposed rule (pursuant to Dkt. No. 86-1 ¶ 16). In the event the Service chooses to file a revised proposed rule, then it shall have six months (until March 21, 2020) to publish a final determination.

The Service, however, has not sufficiently shown a compelling need for the requested additional four months beyond the statutory mandate — especially given, as plaintiffs point out, the already long, drawn-out listing history for the Pacific fisher. The Service states that it wishes to perform a "species status assessment" — the agency's new process (unavailable at the time of the 2014 proposed rule) developed to help inform listing decisions by providing "essential scientific underpinnings and analyses of the best available data about the species and its status" — on remand (*id*. ¶ 9). It asserts that using the species status assessment "generally leads to stronger assessments and improved and more transparent decisions" (*ibid*.).

The Service, however, offers no persuasive reason as to why the species status assessment must be performed at this time or why a standard assessment would be inadequate. Instead, the Service simply states that it "would like to have time to complete one" this time (*ibid*.). This, by itself, is insufficient to justify the additional four months required by this process alone — two months from the end of the public comment period to complete the draft species status assessment, one month to complete peer review of the species status assessment, and one month to incorporate said peer review input into the species status assessment (*id*. ¶¶ 9–11). Without the four months apparently needed to complete the species status assessment, the Service should be in a position to publish one of the three possible Federal Register documents (withdrawal, final listing, or revised proposed rule) within one year.[3]

## CONCLUSION

For the foregoing reasons, the Service's motion is **GRANTED IN PART**. The Service shall have until **SEPTEMBER 21, 2019** to publish a notice in the Federal Register (of withdrawal, final

---

[3] This is not to say that the Service *cannot* perform a species status assessment. Rather, this order simply does not grant extra time beyond the statutory deadlines for the sake of performing it.

listing, or revised proposed rule).  In the event the Service chooses to publish a revised proposed rule, then it shall have until **MARCH 21, 2020** to publish a final determination.

**IT IS SO ORDERED.**

Dated:  November 20, 2018.

WILLIAM ALSUP  
UNITED STATES DISTRICT JUDGE